IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LEAGUE OF WOMEN VOTERS OF ARKANSAS,
SAVE AR DEMOCRACY, BONNIE HEATHER
MILLER, and DANIELLE QUESNELL                                      Plaintiffs

and

PROTECT AR RIGHTS and FOR AR KIDS              Proposed Intervenor-Plaintiffs


v.                    Case No. 5:25-cv-05087-TLB


COLE JESTER, Arkansas Secretary of State,
in his official capacity                                          Defendant

and

TIM GRIFFIN, Arkansas Attorney General,
in his official capacity                              Proposed Defendant


**<u>BRIEF IN SUPPORT OF MOTION TO INTERVENE</u>**

Proposed Intervenor-Plaintiffs Protect AR Rights and For AR Kids

(collectively, "Movants") submit this brief in support of their motion to intervene in

the above-captioned action (the "main action"). Movants are Arkansas ballot

question committees ("BQCs") that plan to support and collect signatures for ballot

measures that would appear on the November 2026 general-election ballot in

Arkansas. Movants seek to challenge a series of laws passed by the Arkansas

General Assembly from 2013 to 2025 that impede their ability to engage voters

during the initiative-and-referendum process and to present their measures to the

voters at an election. Movants allege that the challenged laws infringe upon their

right to engage in core political speech protected by the First and Fourteenth Amendments. As set out in the complaint attached to Movants' motion to intervene, Movants challenge many of the same laws as Plaintiffs in the main action. However, Movants pursue different legal theories in some claims and challenge some additional laws.

Rather than file a separate lawsuit that inevitably would be consolidated into this one, Movants file this timely motion to intervene in the interest of furthering judicial efficiency and protecting their First and Fourteenth Amendment rights. Movants are entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). Alternatively, Movants satisfy the requirements of permissive intervention under Federal Rule of Civil Procedure 24(b)(1). For all these reasons, and as discussed further below, Movants respectfully request that this Court grant their motion to intervene.

## FACTUAL BACKGROUND

Movants are BQCs that intend to support and collect signatures for ballot measures that would appear on the November 2026 general-election ballot in Arkansas. Before collecting signatures, a BQC must receive approval of its ballot title from the Arkansas Attorney General. Ark. Code Ann. § 7-9-107. For AR Kids has received the Attorney General's approval for the "Educational Rights Amendment of 2026" and is currently collecting signatures in support of that measure. As far as Movants are aware, For AR Kids is the only BQC in Arkansas that has received the Attorney General's approval for a 2026 ballot measure and

that is currently able to collect signatures for its proposed measure. Protect AR Rights is in the process of seeking the Attorney General's approval of its ballot title for an amendment to the Arkansas Constitution that would reform the initiative-and-referendum process in Arkansas.

The Arkansas General Assembly has enacted numerous laws, including several in the recently completed 2025 legislative session, that unconstitutionally infringe upon Movants' First Amendment rights to speak and associate with voters and to seek political change through the initiative process. Several of these laws are also unconstitutionally vague under the First Amendment and the Due Process Clause of the Fourteenth Amendment. If the challenged laws are upheld, they will significantly impede Movants' ability to engage with Arkansas voters and gather enough signatures to have their initiatives appear on a ballot for statewide consideration. Movants have an interest in challenging these laws to protect their First Amendment rights to engage in core political speech involved in the initiative-and-referendum process. They seek to intervene in the main action because it challenges many (though not all) of the provisions that affect Movants' rights, and its outcome will significantly affect Movants' ability to exercise their First and Fourteenth Amendment rights tied to the initiative process.

## LEGAL STANDARD

As a threshold matter, "[i]n the Eighth Circuit, a prospective intervenor must establish Article III standing." *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759

F.3d 969, 974 (8th Cir. 2014) (quotation marks omitted). There are three aspects of Article III standing: "(1) injury, (2) causation, and (3) redressability." *Id.*

Under Federal Rule of Civil Procedure 24(a), "a court must permit anyone to intervene who: (1) files a timely motion to intervene; (2) claims an interest relating to the property or transaction that is the subject of the action; (3) is situated so that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) is not adequately represented by the existing parties." *Id.* at 975 (quotation marks omitted); *see also* Fed. R. Civ. P. 24(a)(2). "Rule 24 should be construed liberally, with all doubts resolved in favor of the proposed intervenor." *Nat'l Parks*, 759 F.3d at 975 (quotation marks omitted). Where the party requesting intervention satisfies Article III and the requirements of Rule 24(a), the court has no discretion to deny intervention. *See* Fed. R. Civ. P. 24(a) ("[T]he court *must* permit anyone to intervene who" satisfies the required elements) (emphasis added).

Additionally, Federal Rule of Civil Procedure 24(b) provides that, "[o]n timely motion, the [C]ourt may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." The court may use its discretion to grant permissive intervention when the proposed intervenor can show: "(1) an independent ground for jurisdiction, (2) timeliness of the motion, and (3) that the applicant's claim or defense and the main action have a question of law or fact in common." *Flynt v. Lombardi*, 782 F.3d 963, 966 (8th Cir. 2015). "The principal consideration is whether the proposed intervention would unduly delay or

4

prejudice the adjudication of the parties' rights." *North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 923 (8th Cir. 2015) (quotation marks omitted).

Here, Movants are entitled to intervene as a matter of right under Rule 24(a)(2). In the alternative, all relevant facts favor permissive intervention under Rule 24(b)(1).

<u>ARGUMENT</u>

Movants meet all of the requirements for mandatory intervention. First, Movants can show that they have Article III standing. Further, Movants satisfy all of the elements of Rule 24(a)(2) because they can show: (1) their motion to intervene is timely; (2) they have an interest relating to the main action; (3) they are situated so that disposing of the main action may impair or impede their ability to protect their interest; and (4) they are not adequately represented by the existing parties.

Alternatively, Movants satisfy the requirements for permissive intervention because they can show: (1) they have independent grounds for jurisdiction; (2) their motion to intervene is timely and intervention will not cause undue delay or prejudice to the parties; and (3) their claims and the claims of the main action concern the same questions of law or fact. Accordingly, this Court should grant Movants' motion to intervene in this lawsuit.

## A.  Movants have Article III standing.

"In the Eighth Circuit, a prospective intervenor must establish Article III standing in addition to the requirements of Rule 24." *Nat'l Parks*, 759 F.3d at 974 (quotation marks omitted). "[First,] the prospective intervenor must clearly allege

facts showing an injury in fact, which is an injury to a legally protected interest that is concrete, particularized, and either actual or imminent. . . . Second, the prospective intervenor must establish a causal connection between the injury and the conduct complained of, . . . in other words, the intervenor's alleged injury must be fairly traceable to the defendant's conduct. . . . And, third, the prospective intervenor must establish that a favorable decision will likely redress the injury." *Id.* (cleaned up).

Movants easily satisfy all of the Article III requirements. First, as petition sponsors, Movants have a legally cognizable right to engage in the expression of a desire for political change and a discussion of the merits of the proposed change. Where a state authorizes a citizen-led initiative process, engaging in these forms of expression through that process is considered "core political speech" entitled to the First Amendment's most vigorous protections. *Meyer v. Grant*, 486 U.S. 414, 421 (1988). Because a ruling in favor of the defendants would allow enforcement of laws that violate Movants' rights under the First Amendment, they have a protected interest for purposes of standing. *See ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1092 (8th Cir. 2011) (finding "legally cognizable right" based on defendant-intervenor's claim that their child's First Amendment rights would be infringed if the plaintiff prevailed in the original lawsuit).

Further, Movants' injury is real, imminent, and concrete. If the challenged laws are upheld, it will be significantly more difficult for Movants to get ballot titles approved, recruit paid and volunteer canvassers, share their message with potential

6

petition signers, and gather enough signatures to appear on a ballot. This is a cognizable injury under Article III. *See, e.g.*, *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 194–95 (1999) (finding First Amendment violation where laws burdened petition circulators and initiative sponsors because the law's restrictions "limit the number of voices who will convey the initiative proponents' message" and "reduce[] the chances that initiative proponents would gather signatures sufficient in number to qualify for the ballot"); *Carlson v. Wiggins*, 760 F. Supp. 2d 811, 819 (S.D. Iowa 2011) ("Plaintiffs' allegation that they have been denied the right to vote is sufficient to satisfy the injury in fact requirement of Article III."); *Pavek v. Simon*, 467 F. Supp. 3d 718, 739 (D. Minn. 2020) (holding organizations had Article III standing where statute would force them to divert financial resources to counteract statute's impact on ballot access and harm the electoral prospects of the candidates the organizations sought to have elected).

Second, Movants satisfy the traceability requirement of Article III because there is "a causal connection between the injury" and the challenged action. *Nat'l Parks*, 759 F.3d at 974–75. Here, Defendants are tasked with enforcing the challenged laws, which create the injury suffered by Movants by unconstitutionally burdening their First Amendment rights and ability to engage in the initiative process.

Finally, Movants meet the redressability requirement because a "favorable decision" will prevent the alleged injury. *Id.* If the Court enjoins Defendants from enforcing the challenged laws, Movants' First Amendment rights will be protected

7

and they will be able to engage in the initiative process without the unconstitutional restrictions imposed by the challenged laws.

Because Movants can show (1) they have suffered an injury in fact; (2) a causal connection between that injury and the challenged conduct; and (3) that a favorable decision would redress their injury, Movants have Article III standing.

## B.   Movants are entitled to mandatory intervention under Rule 24(a)(2).

Movants are entitled to mandatory intervention under Rule 24(a)(2) because they can show: (1) their motion to intervene is timely; (2) they have an interest relating to the main action; (3) they are situated so that disposing of the main action may impair or impede their ability to protect their interest; and (4) they are not adequately represented by the existing parties.

### 1.   Movants' motion to intervene is timely.

"To determine whether a motion to intervene is timely, [the Eighth Circuit has] instructed district courts to consider (1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1065 (8th Cir. 2013) (quotation marks omitted). "[T]imeliness is determined from all the circumstances." *ACLU of Minn.,* 643 F.3d at 1094; *see also id.* at 1093 (noting that "[w]hether a person moves for 'intervention of right' or for 'permissive intervention,' the motion

must be timely" and applying the same test for both rules). Each factor favors intervention.

The first through third factors—the extent that the litigation has progressed, intervenors' knowledge of the litigation, and the reason for the delay in seeking intervention—strongly favor a finding of timeliness. Movants filed this motion as quickly as they could after learning of the subject litigation. Plaintiffs filed their complaint just over three weeks ago and no other action has taken place. Courts routinely find motions to intervene timely under these circumstances. *See, e.g.*, *Grand Portage Band of Lake Superior Chippewa v. U.S. Env't Prot. Agency*, No. 22-cv-1783, 2022 WL 20305844, at *5 (D. Minn. Nov. 21, 2022) (finding motion to intervene timely where it was filed "approximately two months" after plaintiffs initiated the lawsuit); *Overby v. Simon*, No. 20-cv-2250, 2020 WL 6391287, at *3 (D. Minn. Nov. 2, 2020) (holding motion to intervene was timely because it was filed when the litigation "was at an early stage"); *S.D. Farm Bureau, Inc. v. South Dakota*, 189 F.R.D. 560, 563 (D.S.D. 1999) (finding motion to intervene timely where intervenor "acted immediately upon learning of th[e] lawsuit" and moved to intervene "only three months after the complaint was filed").

The fourth factor—prejudice to the existing parties—also favors intervention. Courts have recognized that "[i]ntervention is clearly timely when no legally significant proceedings have occurred." *Id.* Thus, in a case like this one, where Movants sought to intervene during an early stage of the case, before any significant proceedings have occurred, and have done so as quickly as they could

have, there is no prejudice to any existing party. *See id.*; *see also, e.g.*, *Friends of the Boundary Waters Wilderness v. U.S. Army Corps of Engineers*, No. 19-cv-2493, 2020 WL 6262376, at *5 (D. Minn. Apr. 9, 2020) ("[T]here is little likelihood that Plaintiffs or Defendants will be prejudiced by the timing of . . . intervention . . . at this early stage of the case.").

Accordingly, this element is satisfied because Movants have filed their motion to intervene in a timely manner and intervention will not prejudice the existing parties.

### 2. Movants have an interest relating to the subject matter of this lawsuit that will be impaired if Defendants prevail.

To meet the interest requirement, a proposed intervenor must show "a recognized interest in the subject matter of the litigation." *Nat'l Parks*, 759 F.3d at 975. That interest "must be substantial, direct, and legally protectable." *Friends of the Boundary Waters Wilderness*, 2020 WL 6262376, at *5. To meet the impairment requirement, the intervenor need only show that "its alleged interest is one that *may* be impaired by the results of the litigation." *Id.* (emphasis added). A proposed intervenor can meet this requirement if it will be "directly impacted by [a] court order" granting plaintiff's requested relief. *Nat'l Parks*, 759 F.3d at 976. Movants easily satisfy these requirements.

As discussed above, Movants have an interest in the main action because they have a legally cognizable right under the First Amendment to engage in core political speech during the initiative process. *See supra* p. 6. The challenged laws violate Movants' rights by impeding on their ability to communicate with voters and

present their measures to the voters at a statewide election. Moreover, some of the laws are unconstitutionally vague in violation of the First Amendment and the Due Process Clause of the Fourteenth Amendment. A court order granting Movants' request to enjoin the challenged laws will directly impact Movants because they will no longer have to comply with these laws that violate their First Amendment rights while engaging in the initiative process.

Thus, Movants meet the second and third elements of Rule 24(a)(2) because they have an interest relating to the subject matter of the lawsuit that will be impaired if Defendants prevail.

### 3. Movants' interest will not be adequately protected by the existing parties.

Movants cannot rely on the existing parties to adequately represent their interests. In general, a "proposed intervenor typically need only carry a minimal burden of showing that their interests are inadequately represented by the existing parties." *Nat'l Parks*, 759 F.3d at 976 (cleaned up). While Movants and Plaintiffs have "a common legal goal," they have separate interests in this matter, and thus, there "is no existing party to this litigation who can adequately represent" Movants' "identified interests," which makes intervention appropriate. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1170 (8th Cir. 1995).

Movants advocate for different ballot measures than do Plaintiffs. Their ballot measures are at different stages of the initiative process, and given the inevitably distinct campaign structures the parties utilize, they are likely to have different focuses in the litigation and different evidence supporting their particular

11

claims and injuries. For example, unlike Plaintiffs, For AR Kids already has a ballot measure approved by the Attorney General and is already collecting signatures in support of that measure, making their need for relief on several of the laws more urgent.

Moreover, Movants seek to challenge laws that Plaintiffs do not, including Act 602 of 2025, which requires ballot titles to be written at an eighth-grade reading level; Ark. Code Ann. § 7-9-126(e), which requires ballot initiative sponsors to collect a specified number of signatures from fifty counties instead of the fifteen counties originally required by the Arkansas Constitution; and Act 273 of 2025, which allows the Arkansas Secretary of State to disqualify signatures if he finds by a preponderance of the evidence that a canvasser has violated Arkansas laws regarding canvassing, perjury, forgery, or fraudulent practices in the procurement of petition signatures. Movants articulate several legal theories under the First and Fouteenth Amendments that Plaintiffs do not assert. Movants also seek to bring claims against an additional defendant, Arkansas Attorney General Tim Griffin, who is responsible for applying Act 602. This is to say, Plaintiffs pursue claims that will impact Movants' First Amendment rights but do not challenge other laws that also infringe on those rights. For all these reasons, Plaintiffs will not adequately represent Movants' interests.

Movants satisfy all of the requirements for Article III standing and mandatory intervention under Rule 24(a)(2). Thus, the Court "must" permit Movants to intervene. Fed. R. Civ. P. 24(a).

C.   **Alternatively, Movants also satisfy the requirements for permissive intervention under Rule 24(b)(1).**

Movants additionally satisfy the requirements for permissive intervention under Rule 24(b)(1). The court may use its discretion to grant permissive intervention when the proposed intervenor can show: "(1) an independent ground for jurisdiction, (2) timeliness of the motion, and (3) that the applicant's claim or defense and the main action have a question of law or fact in common." *Flynt,* 782 F.3d at 966. The "principal consideration" for permissive intervention is whether the proposed intervention would unduly delay or prejudice the adjudication of the original parties' rights. *Franconia Mins. (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017) (citations omitted); *see also* Fed. R. Civ. P. 24(b)(3).

1.   **Movants have an independent basis for jurisdiction.**

The first factor—an independent basis for jurisdiction—is easily met for all of the reasons discussed above regarding Movants' Article III standing. *See supra* pp. 5–8. Further, this Court has subject matter jurisdiction over Movants' claims under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treatises of the United States." The Eighth Circuit has explained that "[f]ederal question jurisdiction exists if the well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota LLC,* 843 F.3d 325, 329 (8th Cir. 2016) (quoting *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998)).

13

### 2. Movants' motion to intervene is timely.

Second, Movants' request for permissive intervention is timely and will not cause any prejudice to the existing parties for all of the same reasons that their request for mandatory intervention is timely and will not cause any prejudice. *See supra* pp. 8–10.

### 3. Movants' claims have many common questions of law or fact with the main action.

Finally, Movants' claims also plainly have a "question of law or fact in common" with the "main action." *Flynt*, 782 F.3d at 966. Here, Plaintiffs' and Movants' claims both center around a series of laws passed by the Arkansas Legislature from 2013 to 2025 that interfere with the initiative-and-referendum process and violate their rights under the First Amendment to engage in core political speech. Specifically, both Plaintiffs and Movants challenge the following laws as being unconstitutional violations of their First and Fourteenth Amendment rights:

- Act 218 of 2025, which requires canvassers to provide petition signers a verbal warning that "petition fraud is a criminal offense" before allowing them to sign. If a verbal warning is impossible, the canvasser must provide a separate written notification.

- Act 240 of 2025, which requires canvassers to view a potential signer's photo identification "to verify the identity" of the potential signer before collecting their signature.

- Act 274 of 2025, which requires that a person may only sign a petition "[a]fter reading the ballot title of the petition in the presence of a canvasser or having the ballot title read to him or her in the presence of a canvasser."

- Ark. Code Ann. § 7-9-103(a)(6), which requires all canvassers, whether volunteer or paid, to be Arkansas residents.

- Act 453 of 2025, which requires that paid canvassers "be domiciled in the state if acting as a paid canvasser for a statewide initiative petition or statewide referendum petition."

- Ark. Code Ann. § 7-9-601(a)(2)(C), which mandates that paid canvassers may not begin collecting signatures until the measure's sponsor has submitted their name and residential address to the Secretary of State.

- Ark. Code Ann. § 7-9-126(b)(4), which mandates that signatures collected by a canvasser shall not be counted if the sponsor did not comply with § 7-9-601(a)(2)(C).

- Act 241 of 2025, which stops a canvasser's ability to collect signatures after she submits a true affidavit required before the Secretary of State will begin counting signatures. This prevents canvassers' ability to collect additional signatures in anticipation of the need for a cure period.

Further, to the extent that Movants do bring additional claims or state different legal theories, as addressed above, those claims and the claims asserted in the main action still involve common questions of law or fact. All center on laws restricting the initiative-and-referendum process.

Overall, the similarities between Movants' claims and the main action far outweigh any differences. Moreover, intervention will promote judicial expediency because the discovery in both actions will be largely the same.

All of the factors of Rule 24(b)(1) favor intervention. Thus, to the extent that the Court does not grant mandatory intervention, it can and should grant Movants' request for permissive intervention.

15

**D.    Movants' complaint in intervention.**

Movants have attached a proposed complaint in intervention to their motion to intervene. This complaint contains the facts relevant to Movants' proposed claims as they exist at the time of filing. However, Movants expect additional facts to develop during the pendency of this motion. Specifically, Movant Protect AR Rights intends to submit its proposed ballot title to the Attorney General for approval soon. Because the Attorney General has ten business days to respond, Protect AR Kids expects to have meaningful facts to add to the complaint if the motion to intervene is granted. Movant For AR Kids may also have additional facts to add arising from its signature-collection efforts, and Movants may also seek to add as plaintiffs in intervention individual canvassers whose rights are affected by the laws restricting canvassing. If the motion is granted, Movants intend to amend the complaint in intervention pursuant to Federal Rule of Civil Procedure 15 to add potential new facts and parties as well as any other relevant material that might develop during the pendency of the motion.

Additionally, should Movants be granted permission to intervene, they intend to seek a preliminary injunction enjoining several of the challenged laws, including Acts 218, 240, and 274, which Movant For AR Kids is uniquely situated to challenge because it is the only BQC authorized to collect signatures at this time. If granted, the preliminary injunction would protect the interests of both Movants and Plaintiffs while they work to have their initiatives placed on the November 2026 general-election ballot.

<u>CONCLUSION</u>

Movants are entitled to intervention as of right under Rule 24(a) because they have Article III standing and can show: (1) their motion to intervene is timely; (2) they have an interest relating to the main action; (3) they are situated so that disposing of the main action may impair or impede their ability to protect their interest; and (4) they are not adequately represented by the existing parties.

If the Court does not grant Movants' motion to intervene as of right, it should allow Movants to permissively intervene because they can show: (1) they have independent grounds for jurisdiction; (2) their motion to intervene is timely and intervention will not cause undue delay or prejudice to the parties; and (3) their claims share many common questions of law or fact with the main actions. For these reasons, intervention is appropriate under Rule 24 and Movants respectfully request that this Court grant their motion to intervene in this lawsuit.

Dated: May 14, 2025                    Respectfully submitted,

                                       */s/ John C. Williams*
                                       JOHN C. WILLIAMS (ABN 2013233)
                                       SHELBY H. SHROFF (ABN 2019234)
                                       Arkansas Civil Liberties
                                             Union Foundation, Inc.
                                       904 W. 2nd St.
                                       Little Rock, AR 72201
                                       (501) 374-2842
                                       john@acluarkansas.org
                                       shelby@acluarkansas.org

                                       *-and-*

17

PETER SHULTS (ABN 2019021)
AMANDA G. ORCUTT (ABN 2019102)
SHULTS LAW FIRM LLP
200 West Capitol Avenue, Suite 1600
Little Rock, Arkansas 72201-3621
(501) 375-2301
pshults@shultslaw.com
aorcutt@shultslaw.com

-and-

Ben Stafford*
ELIAS LAW GROUP LLP
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
bstafford@elias.law
*Pro Hac Vice application forthcoming

*Counsel for Proposed Intervenor-Plaintiffs
Protect AR Rights and For AR Kids*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 14, 2025, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to the official court reporter and the following:

David A. Couch
PO Box 7530
Little Rock, AR 72227
(501) 661-1300
david@davidcouchlaw.com
*Attorney for the Plaintiffs*

I further certify that I have mailed by United States Postal Service the document to

the following non CM/ECF participants:

Michael Dockterman
Cara Lawson
Steptoe LLP
227 W. Monroe, Suite 4700
Chicago, IL 60606
(312) 577-1300
mdockterman@steptoe.com
clawson@steptoe.com
*Attorneys for Plaintiff League of Women Voters of Arkansas*

Jordan Broyles
Senior Assistant Attorney General
Office of the Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 301-0169 (ph)
(501) 682-2591 (fax)
jordan.broyles@arkansasag.gov
*Attorney for Defendant Cole Jester, Arkansas Secretary of State*

*/s/ John C. Williams*
John C. Williams