IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**LEAGUE OF WOMEN VOTERS OF ARKANSAS;**
**SAVE AR DEMOCRACY; BONNIE HEATHER MILLER;**
**and DANIELLE QUESNELL**                                                                    **PLAINTIFFS**

V.                                    **CASE NO. 5:25-CV-5087**

**COLE JESTER, in his Official Capacity**
**as Secretary of State of Arkansas**                                                         **DEFENDANT**

**ORDER**

Now before the Court is a Motion to Intervene (Doc. 5) filed by Movants Protect AR Rights and For AR Kids. Both Plaintiffs and Defendant (collectively, "Respondents") have filed Responses in Opposition (Docs. 12–14), and the Movants have filed a Reply (Doc. 17). For the reasons that follow, the Motion is **GRANTED**.

This case presents challenges to various Arkansas statutes that regulate the process for amending Arkansas law by ballot initiative. Article 5, section 1 of the Arkansas Constitution states that "the people reserve to themselves the power to propose legislative measures, laws and amendments to the Constitution, and to enact or reject the same at the polls independent of the General Assembly." Plaintiffs assert that "[t]he ability of Arkansas citizens, enshrined in this State, to place a measure on the ballot has become impossible due to the substantial and severe burdens that the Arkansas General Assembly recently imposed on that process." (Doc. 2, ¶ 1).

Plaintiffs League of Women Voters of Arkansas ("LWVAR") and Save AR Democracy ("SARD") are ballot question committees ("BQCs"). BQCs are entities that "receive[ ] contributions [or] . . . make[ ] expenditures for the purpose of expressly advocating the qualification, disqualification, passage, or defeat of any ballot question."

1

Ark. Code Ann. § 7-9-402(2)(A). Plaintiffs Bonnie Miller and Danielle Quesnell are members of LWVAR and SARD who have and will continue to canvass for the organizations. Defendant Cole Jester is the Arkansas Secretary of State, which makes him Arkansas's chief elections officer. He "is charged under the Arkansas Constitution with receiving initiative and referendum petitions, determining the sufficiency of signatures and certifying the measures for the ballot." (Doc. 2, ¶ 17).

Movants Protect AR Rights and For AR Kids are also BQCs. They seek to intervene as plaintiffs and would challenge all the laws Plaintiffs challenge plus two that Plaintiffs do not. In addition to the laws Plaintiffs challenge, Movants would also challenge: (1) Act 602 of 2025, "which requires ballot titles to be written at an eighth-grade reading level," as judged by the Arkansas Attorney General; and (2) Ark. Code Ann. § 7-9-126(e), "which requires ballot initiative sponsors to collect a specified number of signatures from fifty counties instead of the fifteen counties originally required by the Arkansas Constitution."[1] To bring their Act 602 challenge, Movants seek to add Arkansas Attorney General Tim Griffin as a defendant.

Movants move for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) or, alternatively, for permissive intervention under Rule 24(b)(1). Respondents oppose intervention, arguing that Movants: (1) lack standing under Article III; (2) do not have the right to intervene under Rule 24(a)(2); and (3) should not be allowed permissive intervention under Rule 24(b)(1).

---

[1] Defendant urges the Court to abstain from exercising jurisdiction over this claim pursuant to the *Pullman* abstention doctrine because LWVAR is currently challenging this provision in state court. *See* Doc. 14, p. 7–8. He cites no authority indicating that an abstention doctrine's potential applicability is an appropriate consideration on a motion to intervene, so the Court does not take up this argument.

Starting with the threshold question of standing, "[a] plaintiff-intervenor must satisfy the same standing requirements as any other plaintiff." *Certon Sofware, Inc. v. EaglePicher Techs., LLC*, 4 F.4th 615, 618 (8th Cir. 2021). To satisfy the requirement of Article III standing, a plaintiff must have: (1) an injury in fact; (2) caused by the challenged conduct; (3) that is judicially redressable. Respondents argue that Movants have not been injured by the additional laws Movants seek to challenge. Indeed, "[s]tanding is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citation modified).

With respect to Act 602, Respondents argue that For AR Kids has no injury because its ballot initiative's title was certified on February 26, 2025, before Act 602 went into effect on April 14, 2025. Protect AR Rights' ballot title was under review by the Attorney General at the time the Responses were filed, so, Respondents argued, any harm posed by Act 602 is merely hypothetical. However, as Movants note in their Reply, the Attorney General has since rejected their ballot title. Therefore, Protect AR Rights has suffered an injury in fact which was caused by Act 602 and which could be redressed by a favorable judicial decision. Movants have standing to challenge Act 602. *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006) ("Where one plaintiff establishes standing to sue, the standing of other plaintiffs is immaterial to jurisdiction." (citation modified)).

Defendant also argues that Movants lack standing to challenge Act 273 of 2025. Act 273 states that "[t]he Secretary of State shall not count signatures collected and witnessed by a canvasser if" he finds "that the canvasser has violated Arkansas laws regarding canvassing, perjury, forgery, or fraudulent practices in the procurement of

3

petition signatures or any provision of the Arkansas Constitution applicable to the collection of signatures on an initiative petition or referendum petition during the current election cycle." Defendant asserts that any injury to Movants under this provision is "too remote and speculative" because, for it to cause injury: (1) Movants would have to "collect a sufficient number of signatures[;] (2) the Secretary would have to discount signatures under this provision[;] and (3) the number of discounted signatures would have to disqualify the measure from the ballot." (Doc. 14, p. 7).

In *Dakotans for Health v. Noem*, 52 F.4th 381 (8th Cir. 2022), the Eighth Circuit held that a South Dakota BQC had standing to challenge a similar statute. *Id.* at 388. There, the South Dakota statute

> invalidate[d] the signature of every voter on every petition submitted by a paid circulator on behalf of a ballot question committee if the circulator: (a) fails to submit the required personal information prior to gathering any signatures; (b) leaves out his or her email address, phone number, or any other required detail; or (c) supplies incorrect information.

*Id.* The BQC brought a pre-enforcement challenge, and the Eighth Circuit found that it had alleged an injury in fact, noting that the statute "affect[ed] the number of persons willing to circulate petitions for [the BQC], the number of persons eligible to circulate for [the BQC], and thus the ability of [the BQC] to reach its audience and successfully gather enough signatures to place a question on the ballot." *Id.* Here, too, Act 273 uses the threat of invalidating voter signatures to force compliance with laws that reduce that number of people willing and able to circulate petitions. This works a concrete and particularized injury on BQCs, which must endeavor to comply with these laws even if their petitions are not ultimately thrown out.

4

Turning to the issue of intervention, a party is entitled to intervene under Federal Rule of Civil Procedure 24(a)(2) if they: "(1) file[ ] a timely motion to intervene; (2) claim[ ] an interest relating to the property or transaction that is the subject of the action; (3) [are] situated so that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) [are] not adequately represented by the existing parties." *Nat'l Parks Conservation Ass'n v. E.P.A.*, 759 F.3d 969, 975 (8th Cir. 2014) (citation modified). Plaintiffs argue that Movants "lack a legally sufficient interest to warrant intervention," (Doc. 13, p. 5), and both Respondents argue that Movants' interests are adequately protected by the existing Plaintiffs. (Doc. 13, p. 5; Doc. 14, p. 8).

With respect to Movants' interest in the litigation, Plaintiffs assert, as in their standing argument, that any interest Movants have is contingent on a series of future events that may not come to pass. For the same reasons the Court rejects Plaintiffs' standing argument, it concludes that Movants do have an interest in this litigation based on the burden the challenged laws allegedly place on Movants' protected speech.

As to the final element, Movants assert that their interests are inadequately represented because Plaintiffs are advocating for different ballot measures which are at different stages of the initiative process, so "they are likely to have different focuses in the litigation and different evidence supporting their particular claims." (Doc. 6, p. 11). Movants also contend that their interests are not adequately represented because they "seek to challenge laws that Plaintiffs do not." (Doc. 6, p. 12). Respondents argue that a desire to challenge additional laws is not an indication that Plaintiffs inadequately represent Movants' interests in the existing litigation. (Doc. 13, p. 5; Doc. 14, p. 9).

"The 'inadequate representation' condition is satisfied if the proposed intervenor shows that the representation of its interests by the current party or parties to the action 'may be' inadequate. The burden for making this showing 'should be treated as minimal.'" *Sierra Club v. Robertson*, 960 F.2d 83, 85–86 (8th Cir. 1992) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). While the Court agrees that the desire to add additional claims and defendants to existing litigation does not itself show the representation inadequate, Plaintiffs make a troubling assertion in their Response that leads the Court to conclude that Movants' interests may not be adequately represented.

In their Complaint, Plaintiffs state that "[t]his is not a partisan issue," (Doc. 2, ¶ 1), but in their Response, Plaintiffs assert that they would be prejudiced by intervention because "the purpose of [Movants'] suit is to get approval of a measure that directly competes with the measure currently being circulated by the existing Plaintiff." (Doc. 13, p. 7). Movants argue that "Plaintiffs' attack on the substance of Protect AR Rights' measure . . . raises serious doubts that Plaintiffs will vigorously pursue the BQC's common claims if they determine later in the litigation that they can get their measures on the ballot without challenging some of the laws in question." (Doc. 17, p. 6). The Court agrees and finds that Movants are entitled to intervention under Rule 24(a)(2).[2]

**IT IS THEREFORE ORDERED** that the Motion to Intervene (Doc. 5) is **GRANTED**.

**IT IS SO ORDERED** on this 23rd day of July, 2025.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[2] Because the Court finds that Movants can intervene as of right, it does not take up permissive intervention.